Donnell JOHNSON, Plaintiff,

v.

Paul EVANS, William Maloney, Daniel Keeler, James Doyle, and City of Boston Defendants.

No. 02–CV–10730–MEL.

United States District Court, D. Massachusetts.

Oct. 15, 2002.

Stephen Hrones, Hrones & Garrity, Boston, MA, for Donnell Johnson, Plaintiff.

Douglas I. Louison, Louison & Costello, Boston, John P. Roache, Lucy H. Halatyn, Hogan, Roache & Malone, Boston, Susan M. Weise, City of Boston Law Department, Boston, MA, for William Mahoney, Daniel Keeler, City of Boston, Defendants.

## MEMORANDUM AND ORDER

LASKER, District Judge.

This is a case about a young man, Donnell Johnson, who was convicted of first-degree murder as a juvenile, and sentenced to eighteen to twenty years in prison. Five years into his sentence, the District Attorney entered a nolle prosequi, and Johnson was released. Johnson alleges that the defendant police officers—William Mahoney, Daniel Keeler, and James Doyle—acting together, violated his civil rights by withholding exculpatory evidence at his murder trial and committing perjury. He further alleges that Boston Police Commissioner Paul Evans and the City of Boston implicitly tolerate the police officers'. unlawful conduct and practices and tolerate a Code of Silence that permits officers to violate citizens' constitutional rights with impunity.

Johnson sues defendants for violation of 42 U.S.C. § 1983; conspiracy to deprive him of his constitutional rights; and violation of the Massachusetts Civil Rights law, M.G.L. ch. § 12. The complaint alleges that defendant police officers Mahoney, Keeler, and Doyle withheld exculpatory evidence in violation of his rights under the Massachusetts Constitution and the Fifth, Sixth, and Fourteenth Amendment rights of the United States Constitution. Johnson further alleges that Mahoney committed perjury at his trial by denying the existence of the withheld exculpatory evidence.

As to Evans and the City of Boston, Johnson alleges that they had "a policy, custom, or practice of improper and inadequate investigation and discipline of acts of misconduct committed by Boston police officers, including withholding of exculpatory evidence and perjury characterized as 'testifying.'" Johnson charges the defendant officers with conspiracy to deprive him of his constitutional rights, including his right

to receive exculpatory evidence, and his right to a fair trial.

On October 31, 1994, nine-year old Jermaine Goffigan was murdered in the local housing developments of Roxbury known as Academy Homes. Based on eye-witness statements, Johnson was arrested for the murder. After having been read his Miranda rights, Johnson waived them and agreed to talk with police. Defendants Doyle and Keeler interrogated Johnson for approximately forty-five minutes in the presence of his mother and father. Johnson denied any involvement in the shooting and informed the officers that he had been home with his family that night. Several times before the trial, Johnson requested production of statements made by him or his mother, but the prosecution continually responded that none existed.

At Johnson's bench-trial for first degree murder of Goffigan, defendant Mahoney testified as follows:

Q. Well, was any statement taken from Donnell Johnson?

A. No.

Q. Nothing was written down?

A. Nothing was taken.

Q. Well, what happened after the waiver was signed?

A. Mrs. Johnson was the co-signee of that, and she refused to allow us to question the boy.

Q. After it was signed?

A. Yes.

Q. So, absolutely no questioning was done?

A. Other than do you understand your Miranda rights, and aspects of that.

Q. So you have absolutely no statements from the defendant relative to that incident?

A. That is correct.

In addition to Mahoney's alleged perjury, Johnson charges that defendants Mahoney, Keeler, and Doyle, acting together, withheld knowledge of Johnson's statement from the D.A., who did not receive any written reports from any of the officers until the evening before the Commonwealth rested at the de novo trial before a jury. The defense did not receive these statements until that day.

According to Johnson, had defendant Mahoney not perjured himself on this issue, and had the defendants provided Johnson's attorney with the exculpatory statements made by him and his mother in timely fashion, Johnson's defense would have been much stronger. For example, Johnson contends that but for the defendants' failure to produce the exculpatory evidence and Mahoney's perjury at the bench trial, he would have taken the stand at his bench trial. However, he asserts, "to do so, knowing the defendant had taken a lengthy statement from him, would have risked his impeachment." In fact, at the bench trial, Johnson alleges that his attorney attempted to elicit from Mahoney the fact that his client agreed to talk to the police in the presence of his parents at the time of his arrest, and that "when defendant Mahoney lied under oath and denied he had done so, the prejudice to the plaintiff was severe." Johnson contends that the prejudice sprang in part from:

The finder of fact, the judge, in the hotly contested case based only on identified evidence was left with the plaintiff apparently refusing to talk to the police. Ordinarily that fact if true would not come into evidence because of plaintiff's fifth amendment right to remain silent. It came out only because the defendants had withheld any exculpatory evidence and one of them had lied to hide the failure to disclose.

Johnson argues further that without the evidence, his attorney was unable to assist him effectively.

The City of Boston and Paul Evans move to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and L.R. (B)(1). Keeler moves to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). The motions are DENIED.

## I.

The question is whether the plaintiff can prove facts which would entitle him to relief. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). As the Supreme Court explained in *Scheuer:*

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.

*Scheuer,* 416 at 236, 94 S.Ct. 1683. The allegations of the complaint are to be construed in favor of the pleader.

■ Applying those principles, the City of Boston and Evans' contention that Johnson's complaint fails to allege a cause of action under § 1983, is not persuasive. The City of Boston and Evans assert that Johnson's complaint is an impermissible attempt to re-litigate the issue of the police officers' allegedly wrongful conduct— issues which have already been dealt with in the criminal case. They note that the Supreme Judicial Court (SJC) in denying Johnson's motion for a new trial held in *Commonwealth v. Kent K., a Juvenile,* 427 Mass. 754, 696 N.E.2d 511 (1998), that the alleged wrongful conduct of the police officers constituted harmless error.

The defendants' claim preclusion argument is without merit, however, because it ignores the stark differences between the criminal appeal and this civil action. John-son's state court proceedings dealt with the proposition whether Johnson's conviction was valid; the present action deals with the proposition that defendants violated Johnson's constitutional rights. Accordingly, the issues raised in Johnson's instant complaint have not been litigated in the state court.

## II.

As an alternative ground for dismissal, the City of Boston, Evans, and Keeler move that the three-year statute of limitations applicable to Section 1983 actions filed in Massachusetts bars the complaint. They contend that Johnson's claims under § 1983 accrued no later than the date of his second trial on November 27, 1996, because Johnson "knew or should have known" at that time about the defendants' failure to produce the exculpatory evidence, subject of the action. *Nieves v. McSweeney,* 241 F.3d 46, 52 (1st Cir.2001).

■ Johnson relies on *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), to support his position that his complaint is timely. He argues that until his conviction was overturned in March 2000, he was barred from instituting a Section 1983 action, because under *Heck* the commencement of such a suit would have been prohibited during the pendency of the criminal proceedings, including the SJC review of his criminal appeal. Moreover, Johnson stresses that the instant case concerns compensation for violation of his constitutional rights, while the state court proceedings ruled only on the limited issue of whether to grant him a new criminal trial. The defendants attempt to distinguish *Heck,* on the grounds that Johnson attacks his conviction on procedural grounds, whereas in *Heck* the court dealt with a substantive challenge.

The statute of limitations applicable to this case was not triggered until March

2000, when the D.A. entered a nolle prosequi as to Johnson. The Supreme Court dealt squarely with the issue in *Heck*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994):

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing no relationship to a conviction or sentence that has not been so invalidated is *not* cognizable under § 1983.

512 at 486–7 (J. Scalia). Accordingly, Johnson's claim for monetary damages relating to his conviction could not have been brought pursuant to § 1983 until March 2000, a date well within the statutory period for bringing suit.

### III.

For the reasons stated, the defendants' motions to dismiss for failure to state a claim are DENIED.

It is so ordered.